IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VALERIE MYERS | : | CIVIL ACTION |
| Individually and as Administratrix | : | NO. 12-3660 |
| of the Estate of Andre Morales, deceased | : | |
| | : | |
| v. | : | |
| | : | |
| POLICE OFFICER DEMOSS JONES, et al. | : | |

O'NEILL, J.                                                                                                    November 5, 2012

**MEMORANDUM**

Plaintiff Valerie Myers individually and as administratrix of the estate of Andre Morales filed this action seeking damages for claims arising out of the decedent's death. Now before me are a motion to dismiss her amended complaint filed by defendants Upland Borough and Police Chief John R. Easton[1] and plaintiff's response thereto. For the reasons that follow I will grant the motion in part and deny the motion in part.

**BACKGROUND**

Most of the circumstances surrounding this action are in dispute, but for purposes of deciding this motion I will view the facts in favor of plaintiff who is the nonmoving party. On June 29, 2010, police officers employed by the City of Chester, Delaware County, and Upland Borough responded to an armed robbery in progress. Dkt. No. 18 at ¶¶ 18, 20, 22. Subsequently, the decedent attempted to flee the area before being shot and killed by the officers

---

[1] Defendants Officer Demoss Jones, Officer L. Paparo, Officer Brockway, Officer Steven Byrne, Officer Robert Weigand, Officer Michael Curran, Officer Luis Rodriguez, Officer F. Myers, Detective Joseph McFate, Detective Patrick Mullen, Captain Joseph Massi, Chief John J. Finnegan, Commissioner Joseph Bail, Jr., Officers John Doe 1-4, SWAT/Tactical Unit Captain John J. McKenna, City of Chester, Delaware County, Chief Floyd Lewis, III and Chief Darren Alston have already answered plaintiff's amended complaint and are not included in this motion to dismiss. Dkt. No. 31 at 1-13.

1

in pursuit. Id. at ¶¶ 23-24. The decedent was unarmed and not posing a threat to anyone while trying to evade arrest. Id. at ¶ 24. Immediately prior to this incident, a police officer at the scene suffered a non-lethal gunshot wound, the origins of which are presently unclear. Id. at ¶ 26.

On June 28, 2012, plaintiff filed her initial complaint alleging a claim for wrongful death under state law as well as various violations under 42 U.S.C. § 1983, including a claim pursuant to Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978). Dkt. No. 1 at 7-22. Her complaint listed Officer Michael Curran as a defendant but incorrectly described him as a member of the Chester Police Department. Id. at ¶ 8. In reality, Officer Curran is a member of the Upland Borough Police Department. Dkt. No. 18 at ¶ 16. Consequently, when plaintiff recognized her error she filed an amended complaint on July 30, 2012, correctly describing Officer Curran's employer. Id. at ¶ 11. The amended complaint also added Upland and Chief Easton as new defendants in her Monell claim. Id. at ¶¶ 7, 10.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech.

Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556.  The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'  To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678.  The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679.  The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679.

## DISCUSSION

Upland and Chief Easton seek to dismiss plaintiff's amended complaint on three grounds.  First, they argue that the statute of limitations has expired for plaintiff's Monell claims and that the amended complaint does not relate back to the filing date of her original complaint.  Dkt. No. 33 at 4.  In the alternative, moving defendants assert that plaintiff does not allege enough facts to

3

sustain her Monell claims. Id. Chief Easton also seeks to dismiss plaintiff's Monell claim against him in his individual capacity. Id. at 18. I will address these issues separately.

## I. Statute of Limitations

The statute of limitations for plaintiff's Monell claims is two years. Garvin v. City of Phila., 354 F.3d 215, 220 (3d Cir. 2003). Plaintiff concedes that she did not file her amended complaint within the two year statute of limitations but argues that the claims set forth in her amended complaint relate back to the filing date of her initial complaint pursuant to Federal Rule of Civil Procedure 15(c)(1). Dkt. No. 37 at 8. Rule 15(c)(1) states that:

> An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). Thus, Rule 15(c)(1) allows a plaintiff to "ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint" under certain circumstances. Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 193 (3d Cir. 2001).

Rule 15(c)(1)(C) applies in the present action because plaintiff seeks to add new defendants and change the affiliation of Officer Curran. The Court of Appeals has held

4

that in order for relation back to apply three conditions must be satisfied: (1) the amended pleading arises from the same conduct, transaction or occurrence as the original pleading; (2) within 120 days after filing the original complaint the party to be added received notice of the suit such that they would not be prejudiced in maintaining a defense; and (3) the party to be added knew or should have known that, but for a mistake concerning her identity, she would have been made a party to the action.  See Garvin, 354 F.3d at 222 (3d Cir. 2003).

### A.  Same Conduct, Transaction or Occurrence

An amended pleading arises out of the same conduct, transaction or occurrence as the original pleading if it shares a "common core of operative facts."  USX Corp. v. Barnhart, 395 F.3d 161, 167 (3d Cir. 2004) (citation omitted); see also Fed. R. Civ. P. 15(c)(1)(B).  To meet this burden, plaintiff must show that the claims set forth in her original pleading arise from "similar facts . . . all occurring around dates similar to those alleged in [the] amended pleading."  Stewart v. Phil. Hous. Auth., 487 F. Supp. 2d 584, 589 (E.D. Pa. 2007).  In the present case, the facts in the amended complaint and the original complaint are nearly identical.  Both pleadings concern the events surrounding the decedent's death and allege the same type of claims.  The only difference is that the amended complaint adds two new defendants and changes the affiliation of one defendant.  Dkt. No. 18 at 1-3.  Because the operative facts in plaintiff's original complaint and amended complaint are indistinguishable, she satisfies the first condition.

### B.  Notice

Rule 15(c)(1)(C)(i) also requires that within 120 days of filing the original complaint, the party or parties to be added received notice of the suit such that they would

not be prejudiced in maintaining a defense.  Fed. R. Civ. P. 15(c)(1)(c)(i).  The notice provided can be actual or constructive.  Singletary, 266 F.3d at 195.  Typically, "[p]rejudice is 'closely interwined' with notice in the context of Rule 15(c)(1)(C)." Martinez v. Warner, No. 07-3213, 2008 WL 2331957, at *5 (E.D. Pa. June 5, 2008), citing Singletary, 266 F.3d at 194 n.3.  "[T]he amount of prejudice a defendant suffers . . . is a direct effect of the type of notice he received. . . ."  Id. (citation omitted).  In Martinez, the Court held that the "three-month difference between the filing of the original complaint and the filing of the amended complaint" did not prejudice the defendants' ability to prepare a defense.  Id. at *7.  In the present case, plaintiff filed her amended complaint less than two months after filing her original complaint.  Cf. Dkt. No. 1 at 1; Dkt. No. 18 at 1.  Shortly thereafter, all defendants received actual notice of the amended complaint and moving defendants submitted their motion to dismiss on September 7, 2012.  Dkt. No. 33 at 1.  Considering the short amount of time between the filing of the original complaint and the amended complaint, I agree with the plaintiff that moving defendants received sufficient notice and have not been prejudiced in maintaining a defense.  Therefore, plaintiff has satisfied the second condition.

### C.  Knowledge of Plaintiff's Mistake

Finally, Rule 15(c)(1)(C)(ii) requires that the party to be brought in by amendment knew or should have known that the action would have been brought against the party, but for a mistake in its identity.  See Arthur v. Maersk, 434 F.3d 196, 207 (3d Cir. 2006).  For purposes of this rule, a "'mistake' is no less a 'mistake' when it flows from lack of knowledge as opposed to inaccurate description."  Id. at 208 (citation omitted).  With regards to timing, Rule 15(c)(1)(C) states that "**within** the period provided by Rule 4(m)

for serving the summons and complaint, the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C) (emphasis added).  Thus, the inquiry examines the defendant's knowledge of the plaintiff's mistake within 120 days after the initial complaint is filed, not the defendant's knowledge prior to the statute of limitations expiring.

Moving defendants do not contest that plaintiff made an error in describing Officer Curran as a member of the Chester Police Department in her original complaint.  Instead, they argue that the amended complaint fails to meet Rule 15(c)(1)(C)(ii) because they "were not aware . . . [of] the current lawsuit until they were sent the [a]mended [c]omplaint after the statute of limitations had already passed." Dkt. No. 33 at 13.  By making this argument moving defendants incorrectly assume that Rule 15(c)(1)(C)(ii) requires defendants to know of a plaintiff's mistake prior to the expiration of the statute of limitations.  On the contrary, moving defendants received the amended complaint within 120 days after the initial complaint was filed.  Consequently, they should have known that plaintiff made a mistake and that they would have been brought in from the beginning absent that mistake.  Such knowledge is enough to meet the third condition of Rule 15(c)(1)(C).

In the original complaint, plaintiff listed Officer Curran, the City of Chester and the Chester Police Chief as some of the defendants responsible for the decedent's death. Dkt. No. 1 at 6-8.  The complaint mistakenly described Officer Curran as a member of the Chester Police Department even though he is an Upland Borough police officer.  Id.  The complaint also alleged that the City of Chester and the Chester Police Chief failed to train

Officer Curran – among others – on how to use deadly firearms in regards to fleeing suspects.  Id. at ¶¶ 48-55.  As Officer Curran's employer, defendants should have known that the plaintiff made a mistake in regards to Officer Curran's affiliation.  Accordingly, the defendants should have also known that but for this mistake, they would have been identified in the initial complaint as defendants who allegedly failed to train Officer Curran.  Accordingly, I find that plaintiff's amended complaint relates back to the timely filed initial complaint.

## II.    Monell Claim

In her memorandum opposing moving defendants' motion to dismiss, plaintiff argues that she has alleged enough facts to bring a "failure to train" Monell claim.  Dkt. No. 37 at 12.  The Court of Appeals "has stated that '[e]stablishing municipal liability on a failure to train claim under § 1983 is difficult."  Galarza v. Szalczyk, No. 10-cv-06815, 2012 WL 1080020, at *21 (E.D. Pa. March 30, 2012), citing Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).  For such a claim, a municipality is only liable when its "failure to train reflects deliberate indifference to the constitutional rights of its inhabitants."  City of Canton v. Harris, 489 U.S. 378, 392 (1989).  Deliberate indifference is shown when "in light of the duties assigned to specific officers or employees the need for more or different training is [] obvious, and the inadequacy [is] likely to result in the violation of constitutional rights."  Id. at 390.  To meet this high standard, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  Connick v. Thompson, ___ U.S. ___, 131 S.Ct. 1350, 1360 (2011) (citation omitted).  Plaintiff has not alleged such a pattern in her amended complaint.

8

"[I]n a narrow range of circumstances," however, a single-incident may be enough to show deliberate indifference. Bd. of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 409 (1997). The Supreme Court provided the example "of a city that arms it police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." Connick, 131 S.Ct. at 1361, citing Canton, 489 U.S. at 390 n.10. In such a hypothetical situation, the Supreme Court opined that "[g]iven the known frequency with which police attempt to arrest fleeing felons . . . a city's decision not to train the officers about constitutional limits on use of deadly force could reflect the city's deliberate indifference to the 'highly predictable consequence,' namely, violations of constitutional rights." Id. If a plaintiff does allege a single-incident that is enough to show a municipality's deliberate indifference, the last requirement is that there needs to be a "direct causal link" between the failure to train and the alleged constitutional violation. Canton, 489 U.S. at 385.

Plaintiff's Monell claim is almost identical to the hypothetical posed by Canton and acknowledged by the Supreme Court in Bryan and Connick. More specifically, she alleges that defendants shot and killed the decedent as he fled the scene of an armed robbery. Dkt. No. 18 at ¶¶ 23-25. Plaintiff also alleges that defendants have not trained their officers on how to handle their deadly firearms when dealing with fleeing felons. Dkt. No. 18 at ¶¶ 57, 59-61. In regards to the latter, moving defendants argue that plaintiff's claim must be dismissed because she does not allege a specific policy or training that the defendants failed to implement, Dkt. No. 33 at 13, but I disagree, especially considering the similarity between the current case and the hypothetical set

9

forth in Canton. Canton, 489 U.S. at 390 n.10. Assuming all of plaintiff's alleged facts are true, it is plausible that the lack of training on the use of deadly weapons for situations involving fleeing felons could have caused Officer Curran to shoot and kill the decedent, in violation of the decedent's constitutional rights. Accordingly, I find that plaintiff's claim under Monell can withstand the instant motion to dismiss.

### III.     Chief Easton's Individual Motion to Dismiss Based on Redundancy

Chief Easton contends that because he is only being sued in his official capacity, the claim against him "is redundant of the claim against Upland and should be dismissed with prejudice." Dkt. No. 33 at 18-19. Plaintiff acknowledges that she has not brought any individual capacity claims against Chief Easton. Dkt. No. 37 at 15. The Supreme Court has held that a suit against an officer in his official capacity is functionally the same as a suit against the government entity that the officer represents. See Kentucky v. Graham, 473 U.S. 159, 165-66, 169 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under Monell, local government units can be sued directly for damages."). Accordingly, many courts have held that it is redundant for a plaintiff to sue both a municipality and its officers solely in their official capacities. See, e.g., Cuvo v. De Biasi, 169 F. App'x. 688, 693 (3d Cir. 2006); Burton v. City of Phila., 121 F. Supp. 2d 810, 812-13 (E.D. Pa. 2000); Crane v. Cumberland Cnty., No. 1:CV-99-1798, 2000 WL 34567277, at *2-3 (M.D. Pa. June 16, 2000). I agree with the holdings mentioned above and will dismiss plaintiff's claim against Chief Easton.

An appropriate Order follows.